Case 14-5226 Lorillard, Inc. et al. v. U.S. Food and Drug Administration et al. Mr. Stern for the appellants, Mr. Cooper for the appellees. Before we start, I know that there are a lot of sealed materials in this case, and you're not sure if you're going to need to refer to them. If you do feel like you need to at any point on your own or in response to questions, please let me know, and we're prepared to clear the courtroom. Thank you. May it please the court, the FDA established the Tobacco Advisory Committee pursuant to the directive of the Tobacco Control Act of 2010. The Tobacco Control Act was charged with various responsibilities as principally relevant here. They included the creation of a report on menthol in cigarettes and also a report on dissolvables. And the report on menthol was due to be submitted within a year of the creation of the committee, and that is indeed what happened. Plaintiffs in this case brought various claims in district court. They asserted claims under the Federal Advisory Committee Act, and also they asserted that the three of the members should have been recused because they had conflicts of interest within the meaning of the Federal Conflict of Interest laws. And the district court accepted that proposition and found that two of the members had actual conflicts, and on that basis the district court enjoined FDA from using in any way the menthol report, and its order also precludes the three members at issue from performing any further tasks on the advisory committee. Now we think that the court's order is wrong for a whole series of reasons, starting with standing going to justiciability on the merits, and finally in the nature of the relief that the court ordered. Counselor, you overwhelmingly stress standing, but I don't think you mentioned the problem of ripeness. I'm wondering whether the specific arguments you make don't fit better as a ripeness defense because they primarily sound in the proposition not so much that these plaintiffs aren't injured, but that their nature of their injury is unclear at this stage, they never eventuated and so forth, all of which sound like ripeness arguments. Well, I agree that it's related to ripeness and ripeness principles. I do think it is a standing problem, but it is certainly the case that if there are a whole series of ifs, and the principle, plaintiffs complain of various injuries, but the principle injury that they complain of is that FDA may rely on the menthol report in some future rulemaking, and we think that if FDA issues a rule, it's going to have to be based on FDA's own independent scientific research that's required by the statute. I mean, I understand your standing argument there, too, but you're very much invoking something that sounds like ripeness because you're saying we'll know when and if the agency issues a rule the extent to which it was influenced or may have been influenced by the alleged wrong here. That's right. I do think that all arguments in the event of a final rule that plaintiffs are agreed by, they'll be able to challenge every aspect and no doubt will of the rulemaking, and they'll be able to say that going back to the initiation of this, members who had been testified repeatedly on behalf of plaintiffs in suits against the tobacco industry participated in the creation of the report, and doubtless there'll be many other claims that are made, too, and all of those can be aired in the event that there is a final rule. So in that case, I do think that I'm not sure that I put the ripeness label on it, but I agree, I think, with the point sort of underlying your comment. You've argued imminence, certainly, as a standing argument, right? There's no imminent injury. So then you've argued that. You have argued that. Yeah, certainly we don't think that there's imminent injury. We don't think that, for that matter, for a lot of these injuries, we don't think that there's regressibility either. What about the district court's determination that members of the committee who already have engagements to do future testimony against the plaintiffs here creates a conflict that's current and real? Well, it would have to be based on something. I mean, there certainly can't be a rule that says that you're harmed because a plaintiff who participated in, because somebody, an expert who participated in the creation of the report is going to take some future, is going to present testimony. Is already under agreement to present that testimony against the very industry that plaintiffs participate in? Yeah. I mean, I'm not sure to what extent. I mean, I have to look back to see to what extent there really are such agreements that, like, are in place. But there is no indication. I mean, there's been a while since, after the report issued, what we have is nothing to support the claim of any harm that's been inflicted by any testimony that's in any way related to sort of the menthol report. Aren't they claiming that at least one of the members, in fact, referred to the menthol report in the testimony? Yeah. What the plaintiff said, or excuse me, what I believe it's Dr. Hanningfield said in that part is he's asked, and it's not in, I think it's sort of in, it's not, it's part of a pretrial deposition. It's not part of testimony, if I'm remembering right. And he's asked, I think, by opposing counsel, would you, you know, are you going to say anything about menthol? And he says, well, what I would say about menthol is what I've said when I've testified before. And then he notes that the statement, that the report of the advisory committee says more or less the same kinds of things that he said before. But isn't that exactly, I mean, that's the problem. The injury they're going to say is these folks come serve on this committee knowing that they have 900 plus contracts for expert testimony lined out in front of them, all of which will be worthless if they produce a report that says the opposite of what they've been saying for the last 10, 20 years. And now instead they get to go into those courtrooms and say, here's my testimony. And guess what? This blue ribbon panel from the FDA agrees with me. And suddenly they've got corroboration and credibility. What about that as an injury? First of all, I don't see, I mean, there is no, there's no injury of that sort that's actually, I think, been claimed here. So my testimony is consistent with the menthol report? Well, I mean, this was the testimony, I mean, the Congress wanted to have people, this is the Tobacco Control Act, the Congress wanted to have the people who were the leading experts in the field be on this committee. Those people, by nature of the fact that they are experts, one of the many things that they do, and it's not that they have a profession of being like expert witnesses, but one of the things that they do is they testify at trials. So if one of the witnesses testifies at a trial in a way that's consistent with everything that he's said before, I don't think that there's the, that doesn't amount to harm. I mean, the claim here is that somehow the report was stacked. And this is summary judgment, it's not sort of a mere, you can't rest on a mere allegation. Plaintiffs have had countless documents, they've had all of the emails of the advisory committee. There's not a shred of evidence that in any way this was stacked against them. I also think that as far as it goes, Dr. Henningfield wasn't even one of the drafters of the report. That's just, you know, sort of a side letter, he was on the committee, but he was not one of the subcommittee that drafted the report. But presumably every member of the committee is important. I mean, that's why they're on the committee. And one, I think it's fair for us to presume that they had influence. Otherwise, any minority of an advisory committee could be biased and there would be no harm under your theory. But there's no, I mean, again, what we have is simply, I mean, it's not even that the focus of the trial on which Dr. Henningfield gave this testimony in a deposition was about nicotine addiction. What Dr. Henningfield said, well, would you say anything about menthol? I said, look, in a particular case, you know, in general, I can tell you that it's my view, which was the view of the advisory committee, but it's his longstanding view that menthol makes it harder to quit, but that in any given case, he says, you wouldn't know that, that it's more important at the end, at the beginning stages, in attracting people, making them addicted in the first place, than it is at the quitting stage, and that he couldn't make a sort of generalized statement about it to put apply. And that's all that he says, and the trial is not about menthol, it's a trial about, was this person one of the features of the trial? If you're a trial attorney and you get to put your expert witness on, and I'm sure they have their expert witnesses, wouldn't you rather have an expert witness that you can then also tell the jury his judgments, his opinions were concurred in unanimously by this Lou Redman commission. He didn't even write it, all those people who wrote it with all their expertise, they agreed to. That would be the case if he was simply on the committee. I mean, it's just I mean, there's such a broad sweeping view of what injury could be, that's not the kind of direct, causal, substantial imminent injury that's been thought the fact that somebody may say well, this person who's testifying has an extra credential They've got 900 plus of these things lined up, that's not disputed, that's not speculative I don't know that they have 900 things under contract Collectively, I think that's  I mean, again They're in the hundreds and hundreds Okay, so they've got that, that's not speculative These people are principally testifying It's not like we then go off to have a series of menthol trials I mean, these are trials about, that are being brought by smokers, they're the same kinds of trials that these people testified in before They're the very people that Congress wanted to have on the committee, because these are the experts in their field and the fact that they're going to continue to testify, and not even principally about menthol I mean, essentially what plaintiffs want is just a rule that says, if you're somebody in the business of testifying against the tobacco industry, you're disqualified Is there anyone in your view or category of person, or type of person at a particular level of rightness that would have standing I mean, I know you claim that there is no private right of action here, but assuming for the moment that there might be where's the better standing candidate? It's hard for me in this case, I mean, I can mention that there would be I mean, you know, like say in NRDC versus Pena this court, just based on the allegations there, the court said, well one of the predicates to establish sort of set out, I mean that had to do with a nuclear sort of reactor, and sort of said well, if you could establish that you live in this area, that you might be exposed to increased environmental risk that might be step one and then the court cautioned but by the way, the fact that this is going to go through notice and comment rulemaking, may make it very difficult for you to establish That's a standard federal right The court characterized it as standard What you have here is the impact in these cases which are comparable perhaps but certainly not standard federal regulatory right decisions Well the court in NRDC did say that that was an issue of standing I mean, that was the word that they used they said that you may have difficulty in establishing standing when there's going to be a notice and comment rulemaking I do think that that does seem relevant to the claim that their harm because the menthol report makes it more likely that the agency will in fact regulate menthol because as you point out there's this intervening notice and comment rulemaking that would seem to give them plenty of chance to put their perspective and attack the report so it's hard to say there's necessarily injury there but we were focusing on some of the other injuries and maybe your position is that there is nobody who has who is injured in those ways such that everything else being not an obstacle I mean it could be I don't want to speculate too much about what could be a problem the things that we don't have here we don't even have a lawsuit allegations about a lawsuit that plaintiffs lost let alone an allegation that plaintiffs lost a lawsuit because of the testimony of one of these three members that would be what you normally think would be essential so your point is that increased some modicum of increase in litigation risk is not an article 3 injury I think that's what you're saying I think just a modicum at this level of speculation no, it's not an article 3 injury even if in some other hypothetical case you actually knew that the consequence of the activity was going to make it the case that you have next week is that an article 3 injury the difficulty in winning your case you'd have to trace it back to the menthol report you'd have to go both ways but if somehow you could put it all together you've got the menthol trial next week it's about a menthol case and this is hypothetical as far as I can tell from this record there's a menthol trial next week and now this guy gets to in addition to all his nice credentials say and by the way the blue ribbon panel they all agree with this view as well is that an article 3 injury I don't think so but I'd agree that that's a harder case but I don't think that it is I mean again all we're talking about is somebody who is taking part in a holy advisory document and the fact that somebody that he can then cite to that for what it's worth and plaintiffs can attack it in adversarial litigation I don't think that that rises but that's not even what we have here we're steps yet away from that and I think that it's telling that the only thing that plaintiffs want to point to and include is the testimony that you referred to Judge Pillard on the you make an argument in your brief that the conflict of interest rules don't create any protected interest in anybody they're there to protect the government and the government only but the Mississippi Valley case specifically referred to protecting the public as well and it seems to me that just looking around this world the people that are often most hurt by corrupt government officials are the citizens and residents of the country that are having to live their lives under corrupt officials so why aren't they correct in saying that at least this is that argument that the ethics rules create protected interest for the public as much as for the government we both well I mean what Mississippi Valley which cited I think chemical foundation which says that the interest that the rules are there to protect the government as I recall the holding in Mississippi Valley is that the government couldn't waive the conflict in its interest and the statements about the general welfare look there's a direct link between in this case I mean I know we often say that there is a direct link between the public welfare and what the government does but there certainly the public has a very strong interest in not having the its government be subject to sort of by employees or in this case advisory committee members but all of these arguments that are being made by the plaintiffs do not distinguish in any meaningful way between employees and advisory committee members and it's certainly true that the public has a strong interest in making sure that the government employees are dedicated to the service of the government and that they aren't using their position for their own financial gain and that's what the conflicts laws do but then the question is how do these laws then get enforced and to date we've done reasonably well without there being a sort of private litigation arm to enforce the conflicts laws and I think the consequences of taking a different view would be fairly extraordinary and the point is not that it's sort of a wrong position because it would open the floodgates it's the fact that it would open the floodgates sort of is one of the sort of symptoms of what's wrong with this argument and you sort of, you know, it's hard to know exactly which doctrinal box or boxes to put the problem into whether it's an issue of enforcement discretion Let's just assume just assume that that these ethics rules are meant to protect the public as well as the government, it's all interconnected they label that a procedural, a violation then of the ethics rules of procedural injury, would you I know you wouldn't agree that they have a procedural injury here but would you characterize that interest, whether you call it the government's interest or the public's interest, a procedural one or a substantive one? How do I know when something's a procedure or substance in this sense? I mean, with as you know, we think that whether you characterize it as procedural or not I got that, I'm just trying to figure out I don't fully understand why this would be procedural, I'm not sure what the procedure is you went through the procedure, I guess there's no dispute the waiver process I think is part of what they're aiming at now, I mean that there's a public process well there was a you can't fault the agency for not trying really hard, I mean, agencies don't have to do anything like the kind of really detailed sort of examination and papering over that this agency did in this case I mean, it really is routine in the government for people to go to their ethics officer and say I've got a potential conflict and the officer may go, in my opinion there's no conflict and he doesn't even have to write that down and if the ethics officer thinks that there is a conflict but it's not substantial then you can give a written certification and then under 208B that gives you a safe harbor or for advisory committees under 208C, the ethics official can go, even if the conflict is substantial I give you a waiver and you're protected but that's all, that's the whole procedure. Alright, we've kept you long I have just one last question sort of about the merits that relates to the process that was undertaken here, I know there was an FDA opinion on the lack of a need to screen for the tobacco cessation products and then there was screening you know conflict screening before the meetings, before the menthol meetings did they just not include consideration of cessation products or did they go ahead and include them even though they had an opinion that they didn't really need to go there? I think what they concluded was that they didn't need to they wanted to know when I do my meeting by meeting, what are you going to be discussing? Like am I going to have to revisit each time the issue of smoking cessation? And I think that what they had decided was no, we don't need to do that. And so you think those meeting by meeting screenings did not look into that? I don't think I don't think we don't have I don't think we've got a record of exactly but I think that was the point was that there was an extensive investigation by the agency into whether it thought it needed to do something, whether it needed to consider giving waivers or recusing people as in one case  it did recuse somebody Alright, thank you. Thank you very much, Your Honor. May it please the Court I'm Richard Cooper for Reynolds I want to address first Judge Williams' question about ripeness In the Wyoming Outdoor Council case which is cited in our brief 165F3, at page 51, the Court said as the Supreme Court noted in Ohio Forestry, quote, a person withstanding who was injured by a failure to comply with, bracket, some procedural requirement, close bracket may complain of that failure at the time the failure takes place for the claim can never get riper We've already suffered two injuries that already exist, independent of any rulemaking that may occur Well, that point only goes to your procedural injury argument Do you have any argument on ripeness as to your argument about skewing the menthol report and the impact on future testimony? Yes, that those injuries have already occurred and if it's not right now, it never will be right, and therefore will be unremitable. The injuries involving access to our confidential information exist as we sit here and stand here today How does a use injunction that you got protect you against that? It protects us only prospectively How? Dr. Samet was on the committee when the District Court issued its opinion. He remained on the committee until earlier this year. FDA had his original term expired in January of 2014. He was present at a TIPSAC meeting in April of 2014 and he did not resign until earlier this year. He would have continued on the committee, would have continued to receive confidential information FDA's statement quoted in the government's I want to get back to my question, though. How does the use injunction against the FDA's use of the report protect you against the use of the report? It doesn't relate to that injury The use injunction relates to our other injuries So what redress could a judgment in this case provide you for whatever you allege are the past injuries you've suffered as a result of this testimony? You said it was a past injury How is it redressed by the relief you sought in this litigation? The past can't be undone but it can be prevented from continuing How does the use injunction that you obtained in this case All you asked for was injunction You didn't ask for damages, you didn't ask for any injunction against their testimony You only asked for an injunction and that's all you got We asked for declaratory relief and we asked for multiple forms of injunction If you look at the prayer for relief in each of our complaints we asked for multiple forms of injunction not merely a use injunction Did you ask for an injunction against these witnesses' testimony? I did not see that. I got your prayer for relief here and I don't see that anywhere We asked that alleging be put on the report that it was a product of that it was an illegal product of bias which would have tied a tin can to it We started this with a confidential information problem that doesn't do anything to it Our understanding is redress and I'm trying to figure out how your complaint would have redressed that particular injury not the other injuries I agree that the use injunction does not address the access to confidential information That injury is addressed by preventing people with conflicts of interest from serving on the committee and getting our confidential information How? If they're not on the committee they don't get the information If they're recused from a particular matter they don't get the confidential information That's future injury How is that future injury not speculative? You started with this is past injury, it's already happened and there's no redress for that past injury and so going forward if they're they've already got confidential information I guess you're saying that's just water under the bridge nothing to be done about that What allegation do you have now that this report is done that they're going to get more confidential information? There's more to the district court's order than the use injunction There's also what I call the compliance directive that the members of the committee not have unwaived conflicts of interest and if they're serving with unwaived conflicts of interest they should not be receiving our confidential information But if it's waived I take it Mr. Cooper that you're also defending the use injunction I certainly am That relates to our second and third injuries But if it's waived you've got no protection You said you only have If FDA waives the conflict of interest they can do that So there's no protection for your use of confidential information going forward either Only if they pay the price of giving a waiver and to make a waiver they have to make findings It might make you feel better to have a waiver on the record but that does nothing to redress the injury that you've alleged That would address other injuries I understand but I'm one injury at a time I'm sorry but I really want to do one injury It's easier to do these one at a time You have to have standing for each claim that you're asserting Each of our injuries is concrete real, particular to us traceable to FDA's appointments of these people and it's meeting by meeting approvals of their participation and it's redressable and indeed is redressed in fact by one of the two parts of the district court's order I agree, the use injunction does not redress the confidential information issue It redresses the other two injuries The confidential information issue is redressed prospectively by the compliance directive so that Dr. Samet or others similarly situated don't henceforth receive our confidential information and then use it to consult against competitors and in formulating their testimony against us in courtrooms That's understanding that they are already under federal law prohibitions against using that confidential information in any way They can do it without disclosing it It can occur simply in their minds They can't put it out of their minds that's recognized in cases that give protective orders We cite one, the digital case You're not injured by what's in their minds Yes we are We're injured by the advice they give or the advice they refrain from giving or testimony they give or refrain from giving without disclosing our confidential information but influenced by it Our confidential information from mistakes Wouldn't that normally be detectable from the testimony and you and your client's knowledge of what information is in the public domain It might or might not be detectable and in the consulting we're not present at all Those are private meetings But you have absolutely no basis no evidence and we're at summary judgment now not at the 12 v. 6 stage What did you come forward at summary judgment to establish standing that shows that there's an actual risk that these folks are going to violate federal law subject themselves to the extent it's a trade secret to potential criminal prosecution by consulting Do you have any evidence that they've done that That's only if they disclose it It's just common sense and it's common sense that's been accepted by courts that grant protective orders against the use of confidential trade secret information outside a particular case and we cited such a case And you're going to have to get those protective orders in every case Think of the burden We've got hundreds and hundreds of cases We have to go for a protective order in every case So that's the injury No, the injury is that it's in their minds it's relevant to the consulting that they give it creates not merely a financial interest but an appearance conflict If you look at the evidence we put before FDA about the editorial in the Boston Globe the columns in the Wall Street Journal and the Washington Examiner the statements by the three public interest groups the two bloggers one of whom testifies against tobacco companies none of these people is a friend they all saw the conflict from this kind of thing from their access to our information and from the role they play as consultants and as testifying experts who recurrently give the same testimony over and over again which is directly the subject of the Menthol Report Can you talk about your injury that you say arises from them skewing the Menthol Report given their subsequent testimonial interests? Absolutely In the the conclusion of the Menthol Report is that Menthol has an adverse public health effect, no public benefit and the public health would be better if menthol cigarettes were removed from the market That result that recommendation is based not on any toxicity but rather on the role of menthol in its physiological effects with respect to initiation addiction and cessation and those are covered in chapters 3 and 6 of the report Chapter 3, the lead author was Dr. Benowitz, one of the three challenge members in the administrative record Benowitz 399 and 528 you will find that Dr. Benowitz asked FDA for permission to work with Dr. Henningfield on chapter 3 that permission was given so Dr. Henningfield presumably consulted with Dr. Benowitz about chapter 3 which is the subject of their testimony Chapter 6, the other leg under the conclusions in the Menthol Report the lead authors included Dr. Salmon and Dr. Benowitz so these people who testify against us shaped the key chapters of the report that led to the conclusion in chapter 8 that menthol would benefit the public health if removed from the market and FDA has issued an advance notice of proposed rulemaking which is an investment of resources by the agency which reports that the agency had done a preliminary scientific investigation on its own and that preliminary scientific investigation indicates that's FDA's verb that the menthol has an effect on the public health and the advance notice also expressly talks about and has comments on a possible ban or restrictions on the sale of menthol cigarettes so this is not speculation You also allege an injury based on a decline in stock prices and I wonder if you have any case in which we've found outside the securities law context such an injury to support standing That's gone from the case as a result of a merger of Laurel Arden Reynolds that's gone Can I get back to the so you've got your argument here about the impact on the content of the report but now you need to tie it to an injury to you and my understanding is that these folks have I thought the number was in excess of 900 plans to testify going forward is that number correct? We give the numbers in our brief and in our submission to FDA that could be right I haven't confirmed the number as you said there are many hundreds of designations Are any of those did you make a showing for a summary judgment as to whether those trials involve menthol cigarettes that are coming forward or not? It doesn't have to be I'm just asking whether you have shown We did not that they were menthol cigarettes but the testimony about menthol occurs even in non menthol cases I understand but if I thought it were important to you whether you had an injury that it would actually be a menthol trial coming up would the record show that any one of those 900 trials involve menthol cigarettes? The record shows testimony about menthol You said there's all these contracts to testify in these future cases are any of those future cases that you're facing menthol cigarette cases? There have been there was testimony I think at least one was it's in the record a declaration of Mr. Latham Will Latham and he attaches to it three transcripts of testimony by Dr. Henningfield and I think in at least one of those cases the plaintiff was a menthol smoker That's a past one It's after the report Oh I see It's after the report And you don't have any sense going forward? I can check and either write a letter I have it here That wasn't part of a submission you made to the district court It was part of a submission to the district court I know this goes to the merits and we may never get there but the notion that a scientist whose field is to study the harm, the acknowledged harm that cigarettes cause to health was a scientist and whose views are only as good as the science that supports them would somehow have a conflict based on giving a view subject to cross-examination in a trial and giving a view in a government commission or helping an investigation in a government commission subject to notice and comment before any rulemaking I'm having a little trouble grasping any harm that flows from that Let me address that There's much more to our position than merely being a scientist and testifying First, we don't rely on any published scientific papers as creating a conflict at all or research. What we rely on is the combination of three factors One is you have somebody who is a paid expert witness who testifies recurrently, multiple times hundreds of times here to a fixed position He or she doesn't testify one day on one thing, one day on something else The same position over and over again and that position is at the core of what the Advisory Committee's work is to be about How does that answer my question? Such a person has a conflict of interest and I would suggest to you in the Citizens for the CRE amicus brief, they cite the case in Ray Kensington which discusses the judicial disqualification provision 28 U.S.C. 455 which is very similar on appearance conflicts to the OGE regulation 5 CFR 2635.502A And in both of those, the test is whether a reasonable person would view, would question the impartiality of somebody It is inconceivable that you could have a judge who testifies as an expert witness over and over and over again on an issue that the judge will decide in a case That judge could not be impartial Neither could Dr. Henningfield or Dr. Benowitz or we contend Dr. Samet given the testimony that they are committed to give and that they have given and we've given quotations and examples that are in the record over and over and over again that cigarette manufacturers, whether it's a menthol case design cigarettes to make them more addictive and an example of that is the use of menthol I'm not sure I see that because one is a judge who's supposed to apply law to fact in a particular case and the other is an expert talking about a scientific fact that's subject to investigation and verification and every different jury or finder of fact in every different trial needs to have that explained by a scientific expert so it's no secret and no showing of bias that that person would say the same thing again and again in fact it seems to undermine your claim that these people have been doing this long before and will continue to do it long after the participation in the federal advisory committee if they were to subscribe to a menthol report that contradicted their testimony they would lose future opportunities to earn a fee that's a financial interest that's right and presumably if the science supported that they would do that and then they would come and be a witness for your client inconceivable Dr. Benowitz or Dr. Hennington is going to testify for us I'm just saying that there is a scientific discipline at the core of both what the witnesses in your cases do and what these advisory committee witnesses do and again this is it's just I think it relates to the question of how you're harmed even though it's a merits question because I'm not sure that I see the bias cashing out in the way that you are pointing to in each of the harms that you might have. Well lots of other reasonable people did see the bias and wrote about it and we put that in the record and under 2635502A that's dispositive and if the government had done a formal waiver you would still be claiming standing right? I don't know that we would be here if they had granted waivers I think it would be very difficult to overcome a waiver I think it would be very difficult for us to get a waiver set aside by a court not to get the waiver set aside but if they had part of your harm I thought was that they didn't go through the waiver process and make that public and I thought you said before that if they had done that there would be a tin can tied to the report at least you'd be able to point to that no if we put a legend on the report saying this was done by conflict yes if they did the waiver you don't get a legend on the report I'm not sure if they do the waiver you don't get any legend on the report I'm saying yes if they did a waiver we'd have to come up with a claim and I don't know that we could but you'd be able to say publicly because it would be made public but you can still say that you're basically saying that here yeah there's a report but look at who did it but if FDA can use the report if the federal courts say FDA can use the report despite all this and you can come into notice and comment rulemaking and say boo look at these people how biased they were and bring in all your best scientists who say they're wrong but if FDA can use the report then the plaintiff's lawyer can argue if it's good enough for FDA it's good enough for a jury that's not your injury now that can't possibly be your injury now because that hasn't happened that's not an imminent injury FDA hasn't used it FDA has to do its own investigation FDA's been barred from using it under the district court's order I'm talking about whether you have standing in this case to remain in possession of that injunction and that is they can't turn on the fact that FDA might in the future decide to rely on the report in addition to its own statutorily mandated investigation we presented evidence we presented evidence in the record that FDA relies on advisory committees you said it relies on its advisory committees but this wasn't actually Congress's advisory committee this wasn't the FDA's idea Congress mandated this advisory committee do you have evidence of how often they have relied on congressionally mandated advisory committees when Congress has also mandated that they first undertake their own independent scientific investigation? I would submit that doesn't make a difference FDA picks the people on the committee it staffs the committee particularly it chooses the chairman who controls the committee and the evidence is that FDA relies very heavily there are statements by FDA itself that it would not it would not act without hearing from the committee let me get that there are statements from FDA to the committee that it was not going to act until it heard from the committee and there's a memo in the record from Dr. Deaton in March of 2011 to the committee saying that it will not act without the committee and there's a statement at the committee itself yes this is on in the administrative record page 6781 it must be emphasized this is the administrative record 6781 it must be emphasized that no regulatory decision on menthol and cigarettes has been made and that the input of the members of the TIPS Act is extremely important in this process and then administrative record 159 in the briefing materials for the first committee meeting the FDA will not issue a final determination on the issues at hand until input from the advisory committee process has been considered and all reviews have been finalized so FDA said publicly that it's going to pay attention to this committee and the history is when a committee is unanimous as Dr. Samet managed to make this committee unanimous FDA relies on its recommendations 92% of the time there's no contrary evidence in the record that's a real possibility of injury that's not speculative and given their investment of resources in the advance notice of proposed rulemaking and their own scientific evaluation FDA seems reasonably committed thank you very much we'll give you two minutes just a couple of very quick points the statements that FDA wouldn't act without the committee were obviously made by the committee like an FDA representative on the committee while the committee was in existence and of course at that time FDA wasn't going to act before the committee issued the report that had been mandated by Congress the reference to other committees and FDA's following the recommendations we pointed out in our reply brief those committees are not at all like this committee they are generally advisory committees that are set up to deal with specific drug or device approvals and notice and comment rulemaking is generally not involved in those cases Mr. Stern is there any situation in which there would be judicial review if there was a complete failure of any kind of conflict screening is there any judicial check on this function I don't there might be some extraordinary circumstance but again whether or not we have inspector generals we have congressional oversight if there were really rampant disregard of the conflicts laws by the agencies I don't think that's going to what about a highly selective violation of the conflict laws that seems more of a problem it's not likely to reach the scale of something leading to congressional intervention but the effect on adversely affected firms can be very severe but I mean the way that the conflicts laws work they don't actually trigger agency determinations I mean it's your responsibility as an employee to recuse yourself if you think you have a conflict and you can go to your agency and try to get a waiver from a conflict but that's the responsibility remains with you the agency has some overview even if there isn't an explicit request for a waiver what it can do it can tell you that this has will not protect you it can tell you we don't think there's a conflict I mean there's criminal prosecution available yes it cannot protect you I mean it can tell you that it's not going to initiate disciplinary proceedings I mean that's what the OGE reg says you should get agency advice they can tell you they're not going to institute proceedings but if you've in fact violated the conflicts law the fact that you were open and square with the agency may be taken into account but it's not going to be dispositive it just struck me that you relied on Webster versus Stowe which is a very different very different kind of context putting a cloak over the executive of non-reviewability because of national security interests it just struck me that it was a little incongruous but I hear you that you're taking that kind of broad position I've sort of come out to thinking that the best way of looking at it is that there's no final agency action that when an agency says when you come to your designated agency official and you say do I have a conflict and the agency official goes I don't think so that that's not final agency action that the rest of the world can come and challenge they're kind of forcing your hand by seeking declaratory relief from the final agency decision makers on this point but there still is no but they're challenging things that warrant themselves final agency action that's one of the reasons why it's not justiciable that's part of your answer to Judge Williams then right I assume you would agree that if there were rampant conflict of interest problems that that would be at least an argument someone would have and there were a resulting rule that relied on that conflicted evidence and information that that would be a basis for an arbitrary and capricious challenge yes absolutely I don't think that these things ultimately we think that when action is taken all arguments are available we're not saying that it escapes judicial review in that way we're saying and in that sense it is a timing question okay so you want to make sure you're answering it Judge Millett is that with a clear display of violations of the rules and a follow on adoption of a rule by FDA these claims would be cognizable in that context yes you could make an argument that the agency like the agency officials were biased personnel were biased procedures were biased and that would be in an APA arbitrary and capricious challenge I think it would be part of it would be arbitrary and capricious contrary to law I mean I don't know how it would get framed but those are always arguments you know that are available and just I'm sorry insofar as your briefs argue that these alleged violations are completely non-justiciable that does not apply to the contest of an issue rule no I think that you could argue in the same way that people argue that agency officials like are biased or that they could say that the advisory committee members are biased to think that it's far more important when you're talking about you know agency employees or officials they've got a lot more authority they don't act in a purely advisory capacity but it's an argument you could make about them it's an argument you could make about the advisory committee members Do you have an answer to their point that after the menthol report issued one of these experts testified in a menthol cigarette trial? That was the unless I'm mistaken that's the same passage that I was discussing earlier with Judge Piller it's not a menthol trial as such and my understanding is that as for these several hundred future sort of testimony that it's not that they've got contracts to do it that they've been listed as potential witnesses sort of by a lot of people They've got money on the line I mean they've got their expert witnesses it's one of the things that they do we're not disputing that and just one final small point I'm sorry Judge You used the term not a menthol trial When you say that you mean simply that the cigarettes in question particular cigarettes in question were not menthol cigarettes The cigarette was a menthol cigarette in that particular trial It's that the legal issues aren't about the contributing effect of the menthol feature to any harm to the plaintiff That's correct Whereas the menthol report is talking about it's the menthol contribution that makes us more attracted to children or makes it more attractive to certain sub-prohibitions In the part that's the plaintiffs have provided specifically says that with respect to an individual he can't even sort of opine as to the effect of menthol In the very example that you gave the witness is talking about probabilistic effects from menthol Yeah that's right I don't think probabilistic effects are often quite enough But for what? I mean we're really at several stages away from an actual injury We're talking about somebody who gave an opinion about in a menthol report context was his opinion before it continues to be his opinion and the question is I just wanted to get clear what the context is You're talking about a witness who speaks to the probable effects of either menthol in the cigarettes or even the availability of menthol I don't want to the materials in the joint appendix and all that the witness is doing there is he's being asked about what he might testify about and so that's all that we have We don't even know if they actually ever testified If you had a future case coming up so it's not far away, it's coming up next the month after the menthol report issues and it was actually about one of the litigation issues was menthol itself that helped to predict this person, keep this person on because it doesn't burn the throat as much or whatever the arguments are, but it was actually focusing in part on the effects of having menthol in the cigarette in the addiction. Would you have a different answer on injury? No, it would be the same answer I think that the fact that you once took part in an advisory committee report the fact that you then later testify about menthol unless there's like some evidence that you were, and this is the claim it's not simply that you're testifying it's that you stacked it, I mean that's the argument Well the reality is I have the numbers up and it's like 900 trials and more than 900 trials coming and that's a lot of money on the line and if these people had produced a report if these three experts had produced a report and they got in there and they studied they talked to the other nine colleagues and they said Pat, we've been wrong oh my gosh menthol makes it safer but if we issue that if we, no if we issue, it's not, this is whether they've been injured if they issue that report, these folks are out of business, they're not going to get called in those other 900 cases, that's a lot of money down the drain, it seems to me that's not speculative, that is very very concrete It does seem speculative because it makes an assumption that people of like whose reputation previously been unquestioned that what they were doing was stacking the report because it's the The question is whether they had a direct financial stake That's a merits question and we don't Their point is that they are injured by the fact that these folks go and create this report that then makes them better witnesses in 900 cases and it seems to be blinking reality to say that they would have gone into that not realizing, maybe it wouldn't have driven it but not realizing that a different answer from that report means 900 trials will be gone for that It would have to be that they stacked the report because that has to be the harm You say stacked the report but that's hypothetical, it's somewhat different In your hypothetical they come in thinking MENFOL is terrible for a variety of reasons and after discussion with committee members they come to see that it's more complicated and so forth so that that firm conclusion is softened, possibly even reversed which one would hope would be the way people would react in such a committee but now as she points out all the revenue coming from testimony in those trials is now out It's a classic conflict of interest That would be We disagree Two things One, whether it's a conflict of interest is a merits point I don't think that the fact that you might be a witness in a future case in which MENFOL could possibly be an issue creates a conflict of interest What's very clear from plaintiff's counsel's presentation is their position is if you consistently testified against the tobacco industry that's a conflict and an appearance conflict and you can't be on the committee this is You can't be on the committee absent a waiver Absent a waiver that's right and of course their position here is that if FDA had thought that there was a conflict then it could have made the determination but it didn't think that there was a conflict and just on a very small point about the confidential information and continuing to be on the committee again all these determinations but conflicts have to be made on a matter by matter basis and the MENFOL report which is where the supposed conflict or the solvables where the supposed conflict existed are not the matters that would be for the committee and would be necessary to make a new determination about whether the agency thought there was a conflict assuming that anything was brought to their attention that suggested that and then whether to waive the conflict if they thought that was the case Thank you The case is submitted
judges: Millett, Pillard, Williams